UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT P. McKINSTRY,<br><br>            Petitioner,<br><br>    vs.<br><br>ROBERT L. AYERS, JR.,[1/] Warden,<br><br>            Respondent. | No. 1:02-CV-06267-JKS<br><br>MEMORANDUM DECISION<br>and<br>ORDER |

       Petitioner Scott P. McKinstry has filed a petition for habeas corpus under 28 U.S.C. § 2254. Petitioner is currently serving a term of 51 years to life in San Quentin State Prison, San Quentin, California.

       Petitioner was charged with four counts. Count I, Murder (CAL. PEN. CODE. § 187), with enhancements for personal use of a firearm (CAL. PEN. CODE § 12022.5, subd. (a)), and for a prior serious felony conviction (CAL. PEN. CODE § 667, subd.(a)). In counts II, III, and IV, Petitioner was charged with being an ex-felon in possession of a firearm (Cal. Pen. Code § 12021, subd. (a)). As to all counts, it was alleged Petitioner suffered a prior serious and or violent felony conviction within the meaning of the three strikes law. After trial by jury, Petitioner was found guilty as charged in counts II, III, and IV of being an ex-felon in possession of a firearm. Petitioner was found not guilty of first degree murder, but convicted of second-degree murder on count I. The jury also found the firearm enhancement to be true. Petitioner waived a jury trial on the special allegations, and the court found the prior conviction allegations to be true.

      Petitioner was sentenced to 15 years to life on count I; doubled to 30 years to life as the appropriate second strike sentence, with a consecutive 10-year term for the firearm enhancement, and a consecutive 5-year term for the prior serious felony conviction enhancement. On count IV,

---

    [1/] Robert L. Ayers, Jr., warden of the California State Prison, San Quentin, is substituted for George J. Giubino, warden of the California State Prison, Centinela. FED. R. CIV. P. 25(c).

the court imposed a consecutive upper term of three years, and doubled that term to six years as the appropriate second strike sentence. On counts II and III, the court imposed terms of 16 months on each count, but stayed the sentences pursuant to CAL. PEN. CODE § 654.

Petitioner timely appealed his conviction to the California Court of Appeal, which affirmed his conviction in an unpublished written decision on December 27, 1999. Petitioner sought review in the California Supreme Court, which summarily denied review without opinion on March 1, 2000. Petitioner did not file a petition for *certiorari* with the U.S. Supreme Court and his conviction became final 90 days later, May 30, 2000. *See Wixom v Washington*, 264 F.3d 894, 897 (9th Cir.2001). On November 1, 2000, Petitioner filed a petition for a writ of habeas corpus in the California Superior Court, Merced County, which denied his petition in a written decision on May 22, 2001. Pettioner timely filed a petition for habeas relief in the California Court of Appeal on July 23, 2001, which summarily denied his petition without opinion on August 9, 2001. Petitioner then timely petitioned for habeas relief before the California Supreme Court on October 1, 2001, which petition was summarily denied without opinion on April 17, 2002. Petitioner timely filed his petition for habeas relief in this Court on October 8, 2002.[2/]

The history of this case and the facts are well known to the parties and are set forth in detail in the opinion of the California Court of Appeal. In the interests of brevity they are not repeated here.

Petitioner raises twelve grounds for relief. Ground 1: The trial court erred in giving former CALJIC 2.50.02. Ground 2: CAL. EVID. CODE § 1109 is unconstitutional. Ground 3: Prosecutorial misconduct in closing argument. Ground 4: Ineffective assistance of counsel in failing to object to prosecutors improper closing argument. Ground 5: Ineffective assistance of counsel by failing to call material witnesses at trial. Ground 6: ineffective assistance of counsel by failing to adequately confront and cross-examine prosecution witnesses. Ground 7: Subornation of perjury by trial counsel. Ground 8: Ineffective assistance of counsel by failing to

---

[2/] The petition bears a filing date of October 16, 2002, the envelope in which it was mailed bears a date of October 11, 2002, while the petition shows it was signed on October 8, 2002. Under the "mail box" rule a petition is deemed filed on the date it is handed to prison officials for mailing. In the absence of evidence to the contrary, the Court assumes it was handed to prison officials on the date it was mailed.

file a notice of appeal.  Ground 9: Ineffective assistance of counsel by failing to preserve the record for appeal.  Ground 10:  Ineffective assistance of counsel for failing to call petitioner to testify on his own behalf.  Ground 11: Failure of defense counsel to withdraw.  Ground 12: The California Superior Court erred in denying Petitioner's petition for habeas corpus.

Petitioner's first four grounds were presented to and addressed by the California Court of Appeal on direct appeal.  All the ineffective assistance of counsel claims (grounds 4 through 11) were presented to the California Courts in the state court habeas proceedings and the last ground was raised, albeit somewhat obliquely, in his habeas petitions to the California Court of Appeal and California Supreme Court.

Because Petitioner filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).  In applying this standard, this Court reviews the last reasoned decision by the state court, *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir.2004), which in this case was that of the California Court of Appeal on direct appeal and the California Superior Court, Merced County, on the state petition for habeas corpus.  In addition, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  When there is no reasoned state court decision denying an issue presented to the state court and raised in a federal habeas petition, this Court must assume that the state court decided all the issues presented to it and perform an independent review of the record to ascertain whether the state court decision was objectively unreasonable. *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir.2006); *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir.2005) (per curiam).

To the extent that Petitioner alleges errors of state law, they are beyond the purview of this Court in deciding a petition for federal habeas corpus relief. This Court may only address violations of federal law. 28 U.S.C. § 2254(d); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("We have stated many times that federal habeas corpus relief does not lie for errors of state law. Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.") (Citations and internal quotation marks omitted)).

Ground 1 (error to give CALJIC 2.50.02): The jury was instructed:[3]

> Evidence has been introduced for the purpose of showing that the defendant engaged in an offense involving domestic violence on one or more occasions other than that charged in the case.
>
> "Domestic violence" means abuse committed against an adult or a fully emancipated minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the defendant has had a child or is having or has had a dating or engagement relationship.
>
> "Cohabitant means two unrelated adult persons living together for a substantial period of time, resulting in some permanency of relationship. Factors that may determine whether persons are cohabitating include, but are not limited to, (1) sexual relations between the parties while sharing the same living quarters, (2) sharing of income or expenses, (3) joint use or ownership of property, (4) whether the parties hold themselves out as husband and wife, (5) the continuity of the relationship, and (6) the length of the relationship.
>
> "Abuse" means intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself or another.
>
> If you find that the defendant committed a prior offense involving domestic violence, you may, but are not required to infer that the defendant had a disposition to commit the same or similar typo offense. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused of.
>
> You must not consider this offense for any other purpose.

CALJIC 2.50.02 was immediately followed by CALJIC 2.50.1.[4]

---

[3] Reporter's Transcript, Vol. 3, 576:10 – 677:16.

[4] *Id.*, 577:17 –23.

> Within the meaning of the two preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed a crime other than that for which he is on trial.
>
> You must not consider this offense for any purpose unless you find by a preponderance of the evidence that the defendant committed the other crime.

This instruction was immediately followed by CALJIC 2.50.2.[5]

> "Preponderance of the evidence" means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are not – that you are unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it.

In his closing argument, the prosecutor argued:[6]

> Let's not forget something else.  Prior acts.
>
> Prior acts of domestic violence that can be used by you on the issue of what his intention was. I submit his intention was to kill her and keep her there to do what had to do to keep her there, which would be a – would be murder.  You can certainly use to see that this was not nan accident.  It was not an accident that the gun appeared there when she was leaving.
>
> You can look to that prior, and because its prior domestic violence, you can do more than that, you can look at that prior domestic violence situation and say because of that, he had the disposition to do this.  Powerful, powerful evidence that Scott murdered Stephanie.

And later in his rebuttal:[7]

> You can use that prior, that prior incident to show disposition, intent and the fact that this not an accident.  And I submit to you that is very powerful evidence of what happened out there.

Trial counsel objected to the inclusion of CALJIC 2.50.02 on due process grounds under both the United States and California Constitutions.[8]  Petitioner raised the same argument on direct appeal.  In rejecting Petitioner's arguments, the Court of Appeal held.

---

[5] *Id.*, 577:24 – 578:4.

[6] *Id.*, 627:8–22.

[7] *Id.*, 680:14–17.

[8] *Id.*, 564:25 – 565:6.

Appellant also challenges the specific instructions given in this case, and argues the instructions are unconstitutional, regardless of the validity of sections 1108 and 1109. In the instant case, the jury was instructed that evidence "has been introduced for the purpose of showing that [appellant] engaged in an offense involving domestic violence on one or more occasions other than that charged in the case."

> "If you find that [appellant] committed a prior offense involving domestic violence, you may, but are not required to infer that [appellant] had a disposition to commit the same or similar [type] of offense. If you find that [appellant] had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime of which he is accused. [¶] You must not consider this offense for any other purpose."

The jury was also instructed that within the meaning of the preceding instruction, the prosecution had the burden of proving by a preponderance of the evidence that appellant "committed a crime other than that for which he is on trial. [¶] You must not consider this offense for any purpose unless you find by a preponderance of the evidence that [appellant] committed the other crime. [¶] 'Preponderance of the evidence' means evidence that has more convincing force than that opposed to it. If the evidence is so evenly balanced that you are . . . unable to find that the evidence on either side of an issue preponderates, your finding on that issue must be against the party who had the burden of proving it."

Appellant asserts these instructions allowed the jury to convict him of the charged offense based on the preponderance of the evidence standard used to evaluate the propensity evidence, and failed to clarify that the prosecution still had the burden of proving the charged offenses beyond a reasonable doubt.

In order to prevail on a claim that jury instructions are misleading, defendant must prove the reasonable likelihood the jury misunderstood the instructions as a whole. (*People v. Cain* (1995) 10 Cal.4th 1, 36.) The correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of instruction or from a particular instruction. (*People v. Castillo* (1997) 16 Cal.4th 1009, 1016.) The absence of an essential element in one instruction may be supplied by another or cured in light of the instructions as a whole. (*Ibid.*)

In *People v. Medina, supra*, 11 Cal.4th 694, the court considered whether CALJIC No. 2.50.1 was erroneous and conflicted with CALJIC No. 2.01 (each fact essential to a complete set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt). *Medina* applied the preponderance of evidence standard to determine the truth of evidence of other crimes to establish circumstantial evidence of intent or motive. Evidence of other crimes is a mere "evidentiary fact" which need not be proved beyond a reasonable

doubt as long as the jury is convinced beyond a reasonable doubt of the truth of the "ultimate fact" of the defendant's knowledge or intent. (*Id*. at p. 763.) *Medina* saw no compelling reason to reconsider this rule, and upheld the constitutionality of CALJIC No. 2.50.1 by finding the prosecutor's burden of proof was not reduced by the preponderance of the evidence instruction with regard to proof of other crimes. (*Id*. at p. 764.)

In *People v. Carpenter* (1997) 15 Cal.4th 312, defendant argued the trial court erroneously admitted evidence of three uncharged murders and one rape. Such evidence was found probative on the questions of intent, deliberation and premeditation. (*Id*. at pp. 378,380.) Defendant argued an instruction which advises the jury that uncharged crimes need only be proven by preponderance of the evidence (i.e., CALJIC No. 2.50. l), together with an instruction that such evidence could be considered on the matter of defendant's state of mind (i.e., CALJIC No. 2.50), combined to reduce the prosecution's burden of proof as to the defendant's mental state (i.e., a necessary element of the charged offense) below that of reasonable doubt. (15 Cal.4th at pp. 380-383.)

*Carpenter* rejected the argument that such jury instructions somehow lessen the prosecution's burden of proof. The court found the instructions as a whole, including the standard instructions on reasonable doubt (CALJIC No. 2.90) and sufficiency of circumstantial evidence to prove the necessary specific intent or mental state (CALJIC No. 2.01), made clear that the prosecution still had to prove the intent element of the offense beyond a reasonable doubt. (15 Cal.4th at pp. 380-383.)

Thus, *Medina* and *Carpenter* recognize the premise that the defendant has a due process right to have each fact necessary to the conviction proved beyond a reasonable doubt, but found this burden was not diminished by an instruction that other crimes evidence need only be proved by a preponderance of the evidence. Medina and Carpenter also found that when CALJIC Nos. 2.50 and 2.50.1 are viewed in context with CALJIC Nos. 2.90 and 2.01, it was not reasonably likely the jury will find a necessary element of the charged offense on a standard less than beyond a reasonable doubt. (*People v. Medina, supra,* 11 Cal.4th at pp. 763-764; *People v. Carpenter, supra*, 15 Cal.4th at p. 383.)

As discussed above, the Supreme Court recently found that the admission of propensity evidence pursuant to section 1108 was constitutional and did not violate due process. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 920-922.) *Falsetta* also held the admission of such evidence did not dilute the prosecution's burden of proof.

> "As previously noted, evidence of a defendant's other sex offenses constitutes relevant circumstantial evidence that he committed the charged sex offenses. A properly instructed jury will, as here, be given the usual instructions regarding the

> presumption of defendant's innocence and the prosecutor's proof
> burden. Additionally . . . , at the defendant's request, the jury may
> be told that evidence of his other sexual offenses is not sufficient
> by itself to prove his commission of the charged offense, that the
> weight and significance of the evidence, if any, is for the jury to
> decide, and that unless otherwise instructed, the jury may not
> consider this evidence for any other purpose. (See CALJIC No.
> 2.50.01 (1999 rev.) (6th ed. pocket pt.).) This instruction will help
> assure that the defendant will not be convicted of the charged
> offense merely because the evidence of his other offenses indicates
> he is a 'bad person' with a criminal disposition." (*People v.
> Falsetta, supra*, 21 Cal.4th at p. 920.)

*Falsetta* approved the 1999 revisions to CALJIC No. 2.50.01, which included the additional admonition that if the jury found by a preponderance of the evidence the defendant committed the prior sexual offense, that was not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crime. "This admonition helps assure that the defendant will be tried and convicted for his present, not his past, offenses." (*People v. Falsetta, supra*, 21 Cal.4th at p. 923.)

In *Falsetta*, the defendant requested modification of the existing instructions to address these issues, but his specific request was rejected by the trial court as stating incorrect and misleading legal principles. *Falsetta* found that while defendant's proposed instructions were erroneous, the trial court should have tailored the standard instructions to give the jury some guidance regarding the use of other crimes evidence, rather than denying the request outright. (*Id*. at p. 924.) However, *Falsetta* found the court's failure to tailor the standard instructions was "clearly harmless." (*Ibid.*)

> "'Considering first the evidence of the two prior rapes, the
> testimony on these crimes was neither lengthy nor cumulative. The
> prior rapes shared many similarities to the charged crimes, and
> were not inflammatory when compared to the charged offenses.
> Falsetta was convicted of the prior rapes, so it is unlikely that the
> jury would be tempted to convict him again of these crimes. The
> prosecutor did not argue to the jury that they should convict
> Falsetta based on the past crimes. In all, the propensity evidence
> was circumscribed and sufficiently related to the charged offenses
> such that there was very little likelihood that the jury would
> convict Falsetta based on the prior crimes alone. [¶] Moreover, the
> other evidence against Falsetta was overwhelming. Without
> cataloguing everything pointing toward Falsetta's guilt, we will
> note some of the more obvious pieces of evidence: Rochelle W.
> accurately described Falsetta to the police, and when she identified
> him at the lineup, she was visibly shocked. Rochelle W. gave an

> accurate and detailed description of his car, from the medallions
> hanging from the rearview mirror to the plaid shirt (which was still
> in the car at his arrest). Falsetta lived near the Union City drive-in
> theater and near the Whipple Road exit, which is just where he told
> Rochelle W. he lived. The similarities between Falsetta and
> Rochelle W.'s attacker cannot be chance; the evidence fully points
> to Falsetta and no one else. Any error in failing to instruct the jury
> on how to use the propensity evidence was harmless.' . . ." (21
> Cal.4th at pp. 924-925 .)

Appellant relies on *People v. Vichroy, supra,* 76 Cal.App.4th 92, which was decided after *Falsetta*, for the contention that the standard instructions given in this case are unconstitutional as a matter of law. Vichroy held the standard instructions stated in CALJIC No. 2.50.01 required "no proof at all" of the current charges. (76 Cal.App.4th. at p. 99.) "The constitutional infirmity arises in this case because the jurors were instructed that they could convict [defendant] of the current charges based solely upon their determination that he had committed prior sexual offenses." (*Ibid*.) *Vichroy* concluded the entirety of the instructions "did nothing to clarify that the jurors were not to convict [defendant] of the current charges simply because they concluded beyond a reasonable doubt that he had committed prior sexual offenses." *(Ibid.)*

In the instant case, the entirety of the record reflects the reasonable likelihood that the jury convicted appellant based upon proof beyond a reasonable doubt. As in *Carpenter* and *Medina,* the jury was not only instructed as to the consideration of the section 1109 evidence, but also received CALJIC No. 2.90, setting forth the prosecution's burden of proving appellant guilty of the charged offenses beyond a reasonable doubt. CALJIC No. 2.90 was immediately followed by instructions defining the elements of the charged offenses which the prosecution had to prove. The jury also received CALJIC No. 1.01, to consider the instruction as a whole and not to single out any particular instruction and ignore the others; and CALJIC No. 2.01, that an inference essential to guilt, arising from circumstantial evidence, must be proved beyond a reasonable doubt. Appellant's argument would require every jury instruction addressing evidence or elements of an offense to refer to the reasonable doubt standard. This would render superfluous CALJIC No. 1.01's direction to consider the instructions as a whole and not to single out any particular sentence or individual point of an instruction and ignore the others.

In addition, a review of closing argument indicates the jury was made aware of the different burdens of proof. Appellant's counsel discussed the prosecution's burden of proving the charged offenses beyond a reasonable doubt, and distinguished that burden from the preponderance of the evidence standard. Counsel noted the preponderance standard was used for the entirety of civil cases,

but was only applicable "to one little facet of this case," and extensively discussed the differences between the two standards.

The entirety of the record and instructions reflect the jury was properly instructed to evaluate such prior conduct pursuant to the preponderance of the evidence standard, the prosecution still having the burden of proving every element of the offense beyond a reasonable doubt, and the jury could not convict appellant solely on proof of the other crimes. (See *People v. Van Winkle, supra*, 75 Cal.App.4th 133 .)

In addition, we disagree with *Vichroy*'s premise that the standard instructions are unconstitutional as a matter of law. Instead, we turn to *Falsetta* for guidance as to the impact of the confusion, if any, created by the instructions given in this case, As in *Falsetta*, even if the instructions could be considered erroneous, the evidence against appellant was overwhelming. He continually changed his story when confronted with contradictory evidence, such as his failure to use the living room telephone immediately after the shooting, even though he used it after the police arrived, and the victim's alleged reason for leaving to buy something to drink, despite the presence of numerous beverages in the kitchen. The most damaging evidence against appellant was his own statements, together with his belated assistance in uncovering the murder weapon. The entirety of the record raised the very strong inference that appellant shot Stephanie when she tried to leave, and allowed her to bleed to death as he buried the gun, washed the gunshot residue from his hands, disposed of his bloody jacket, and tried to think of an appropriate story to cover all the evidence. Thus, as in *Falsetta*, any instructional error is necessarily harmless. (*People v. Falsetta, supra,* 21 Cal.4th at pp. 924-925.)

In 1999 CALJIC 2.50.01 and 2.50.02 were revised to clarify how jurors were required to evaluate the defendant's guilt relating to the charged offense if they found that he had committed a prior sexual or domestic violence offense. The following paragraph, which was not part of the instruction given in this case, was added to the end of the otherwise unchanged instruction CALJIC 2.50.01 (a similar paragraph was added to CALJIC 2.50.02):

However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove beyond a reasonable doubt that [he] [she] committed the charged crime [s]. If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider, along with all other evidence, in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime.

Before the 1999 revision, California courts were divided as to whether the instructions withstood constitutional challenges on due process grounds.[9/]

First, Respondent argues that Petitioner has not presented a constitutional issue. The Court summarily rejects that argument. Petitioner in his direct appeal clearly and unequivocally raised both federal and state constitutional issues and the California Court of Appeals directly answered those. He also clearly raises the Fourteenth Amendment to the U.S. Constitution in his petition to this Court.

Second, Respondent argues:

> Nothing in CALJIC 2.50.02 instructs the jury that an uncharged offense standing alone is sufficient to convict on the charged offense. Moreover, the instructions given in the present case, taken as a whole, properly instructed the jury that they could not convict Petitioner unless they found that he had committed those crimes beyond a reasonable doubt.

In *Gibson v. Ortiz*, 387 F.3d 812 (9th Cir.2004), the Ninth Circuit addressing an almost identical instruction, CALJIC 2.50.01 (pre-1999 revision), rejected similar arguments, holding that the pre-1999 CALJIC 2.50.01, used in conjunction with CALJIC 2.50.1, was contrary to *In re Winship*, 397 U.S. 358 (1970) and *Sullivan v. Louisiana*, 508 U.S. 275 (1993). In *Gibson* the instructions given read (387 F.3d at 817–18 (footnotes in the original)):

> At the time of trial, CALJIC No. 2.50.01 read in part:
>
> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense on one or more occasions other than that charged in the case....
>
> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.

---

[9/] *Compare People v. Younger*, 101 Cal.Rptr.2d 624 (Cal.App.2000); *People v. James*, 96 Cal.Rptr.2d 823 (Cal.App.2000); *People v. Orellano*, 93 Cal.Rptr.2d 866 (Cal.App.2000), and *People v. Vichroy*, 90 Cal.Rptr.2d 105 (Cal.App.1999) [finding the instructions were constitutionally and irreparably defective]; *with People v. Escobar*, 98 Cal.Rptr.2d 696 (Cal.App.2000); *People v. O'Neal*, 93 Cal.Rptr.2d 248 (Cal.App.2000), *People v. Regalado*, 93 Cal.Rptr.2d 83; (Cal.App.2000) and *People v. Van Winkle*, 89 Cal.Rptr.2d 28 (Cal.App.1999) [finding the instructions would not mislead as to the correct burden of proof beyond a reasonable doubt].

> Unless you are otherwise instructed, you must not consider this evidence for any other purpose.[3]

CALJIC No. 2.50.01.[4]

The instruction was read in tandem with a modified version of CALJIC No. 2.50.1, which provided:

> Within the meaning of the preceding instructions, the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial.
>
> You must not consider this evidence for any purpose unless you find by a preponderance of the evidence that a defendant committed the other sexual offenses and/or domestic violence.

CALJIC No. 2.50.1.

---

[3] [This footnote defining "sexual offense" omitted.]

[4] The jury also received CALJIC No. 2.50.02, which is identical in all aspects to No. 2.50.01, except that it addresses prior acts of domestic violence.

---

\* \* \* \*

The Ninth Circuit reasoned (397 F.3d at 821–25 (footnote in the original))

> The instruction given to the jury in this case, CALJIC No. 2.50.01, specifically read:
>
>> If you find that the defendant committed a prior sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit the same or similar type sexual offenses. If you find that the defendant had this disposition, you may, but are not required to, infer that he was likely to commit and did commit the crime or crimes of which he is accused.
>
> We presume that the jury followed these instructions, *see Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"), and proceeded on the basis that if it found Gibson had committed prior sexual offenses, it was then permitted to infer that Gibson had committed the charged offenses.
>
> Had the jury instructions ended with CALJIC No. 2.50.01, our inquiry would have ended with a denial of Gibson's petition. We would have assumed that the jury followed, with respect to the prior sexual offenses evidence, the only

standard regarding burden of proof they had received: reasonable doubt. The trial court, however, went on to instruct the jury with CALJIC No. 2.50.1, which ascribed a lesser burden of proof for evidence of previous sexual offenses. The instruction specifically referenced CALJIC No. 2.50.01 and outlined the applicable burden of proof for the prior sexual offenses:

> Within the meaning of the preceding instructions the prosecution has the burden of proving by a preponderance of the evidence that a defendant committed sexual offenses and/or domestic violence other than those for which he is on trial.

CALJIC No. 2.50.01, in turn, provided that the jury could infer that the defendant committed the charged crime if it found "that the defendant committed a prior sexual offense." Therefore, the interplay of the two instructions allowed the jury to find that Gibson committed the uncharged sexual offenses by a preponderance of the evidence and thus to infer that he had committed the *charged* acts based upon facts found not beyond a reasonable doubt, but by a preponderance of the evidence.

When viewed as a whole, there is nothing ambiguous or confusing about the challenged instructions: CALJIC Nos. 2.50.01 and 2.50.1 told the jury exactly which burden of proof to apply. However, contrary to the Supreme Court's clearly established law, the burden of proof the instructions supplied for the permissive inference was unconstitutional.

We therefore agree with the district court and hold that the challenged instructions are constitutionally infirm. The 1996 version of CALJIC No. 2.50.01 runs directly contrary to *Winship's* maxim that a defendant may not be convicted except "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship,* 397 U.S. at 364, 90 S.Ct. 1068; *see also Taylor,* 436 U.S. at 485-86, 98 S.Ct. 1930 ("[T]he Due Process Clause of the Fourteenth Amendment must be held to safeguard 'against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt.'") (citations omitted).[8]

---

[8] The state court relied on *Estelle v. McGuire* in finding that there was not a reasonable likelihood that, as a whole, the jury misunderstood the instruction. However, reliance on *Estelle* presupposes that the instruction is ambiguous. As explained above, we find the challenged instructions unambiguous as to inferences permitted by evidence of uncharged acts. *Estelle* is therefore inapposite.

---

We are unpersuaded by the warden's argument that the instructions, when read as a whole, properly set forth the reasonable doubt standard. Contrary to the Warden's assertions, that the jury was given instructions regarding the

presumption of innocence, the meaning of "beyond a reasonable doubt," and the use of circumstantial evidence, does not offset the preponderance instruction given in CALJIC No. 2.50.1. That instruction, read together with CALJIC No. 2.50.01, permitted an impermissible inference. The jury was never told how, or if, the two standards of proof set forth in the instructions should be harmonized. Rather, it received only a general instruction regarding circumstantial evidence, which required proof beyond a reasonable doubt, and a specific, independent instruction relating to previous sexual abuse and domestic violence, which required only proof by a preponderance of the evidence.

The explicit language of CALJIC No. 2.50.1 carves out of the general reasonable doubt standard a specific exception for prior evidence of sexual abuse and domestic violence, which carries only a preponderance burden. We find no reason to deviate from our well-settled rule of construction that the specific controls the general. *See Flores-Chavez v. Ashcroft,* 362 F.3d 1150, 1158 (9th Cir.2004). *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), supports application of this principle to jury instructions. There, the Supreme Court held that the use of a contrary general instruction does not automatically cure a deficient specific instruction. *Id.* at 320, 105 S.Ct. 1965. *Francis* involved conflicting instructions to a jury in a murder trial, which informed the jury both that once the state had proven the predicate facts that it had created a presumption of intent and that the presumption "may be rebutted." *Id.* at 309, 105 S.Ct. 1965. In holding that the general instructions regarding the government's burden of proof did not cure the specific defects in the language that allowed the government to impermissibly shift the burden of proof to the defendant, the Court stated:

> Nothing in these specific sentences or in the charge as a whole makes clear to the jury that one of these contradictory instructions carries more weight than the other. *Language that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity.* A reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict.

*Id.* at 322, 105 S.Ct. 1965 (emphasis added).

Because the trial court offered no explanation harmonizing the two burdens of proof discussed in the jury instructions, Gibson's jury was presented with two routes of conviction, one by a constitutionally sufficient standard and one by a constitutionally deficient one. As *Francis* makes clear, that the trial court instructed the jury generally with the correct standard does not mean that due process was not violated when an exception to that standard was not only presented to the jury, but offered as a possible means of conviction.

Moreover, the second paragraph of CALJIC No. 2.01 instructed jurors *generally* that any inference they make must be necessarily based upon facts

proven beyond a reasonable doubt. This instruction squarely conflicts with the language of CALJIC No. 2.50.01, which instructed jurors that facts of prior alleged offenses need only to be proven by a preponderance of the evidence to support an inference that Gibson had committed the charged offenses. We are unpersuaded by the warden's argument that the jury would be able to discard that portion of CALJIC No. 2.01 providing that each fact that supports an inference must be based upon a reasonable doubt (as CALJIC No. 2.50.01's standard negates), but would nevertheless follow the portion of CALJIC No. 2.01 that requires all facts essential to establishing guilt to be found beyond a reasonable doubt. The more logical conclusion is that the jurors understood the reasonable doubt standard of CALJIC No. 2.01 to apply to circumstantial evidence generally, as the instruction's title clearly states, and the preponderance of the evidence standard in CALJIC No. 2.50.01 to apply specifically to circumstantial evidence of prior sexual offenses.

*   *   *   *

CALJIC No. 2.50.01 permitted the jury to find Gibson guilty of the charged sexual offenses by merely a preponderance of the evidence, and therefore constituted structural error within the meaning of *Sullivan. See Sullivan,* 508 U.S. at 281-82, 113 S.Ct. 2078. In *Sullivan,* the trial court gave the jury a definition of reasonable doubt that had previously been held unconstitutional in *Cage v. Louisiana,* 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). In invalidating Sullivan's conviction because of the unconstitutional standard of proof, the Supreme Court tied the Fifth Amendment requirement of proof beyond a reasonable doubt to the Sixth Amendment right to a jury trial, holding that "the jury verdict required by the Sixth Amendment is a jury verdict of *guilty beyond a reasonable doubt.*" *Id.* at 278, 111 S.Ct. 328 (emphasis added). A *Sullivan* error precludes harmless error review because no verdict within the meaning of the Sixth Amendment has been rendered. *Id.* at 280, 113 S.Ct. 2078; *see also Jackson v. Virginia,* 443 U.S. 307, 320 n. 14, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ("Our cases have indicated that failure to instruct a jury on the necessity of proof of guilt beyond a reasonable doubt can never be harmless error").

The *Sullivan* court noted that without a proper verdict,

> [t]he most an appellate court can conclude is that a jury *would surely have found* petitioner guilty beyond a reasonable doubt–not that the jury's actual finding of guilty beyond a reasonable doubt *would surely not have been different* absent the constitutional error. That is not enough.

*Sullivan,* 508 U.S. at 280, 113 S.Ct. 2078 (emphasis in original).

We disagree that *Sullivan* is inapplicable because Gibson's jury was given at least one correct reasonable doubt instruction (CALJIC No. 2.01) and was also instructed on the presumption of innocence (CALJIC No. 2.90). We remain

unconvinced that this circumstance removes the use of CALJIC No. 2.50.01 from the realm of constitutional error. CALJIC 2.50.01 gave the jury an alternate means of conviction with a lesser standard of proof than is required by the Constitution. When a court gives the jury instructions that allow it to convict a defendant on an impermissible legal theory, as well as a theory that meets constitutional requirements, "the unconstitutionality of any of the theories requires that the conviction be set aside." *Boyde,* 494 U.S. at 379-80, 110 S.Ct. 1190.

> The rationale of *Boyde* provides the ultimate resolution for Gibson's case. Even if we were to assume that the jury had been properly instructed on the reasonable doubt standard as to its ultimate findings and *could* have found Gibson guilty of the charged offenses beyond a reasonable doubt, we have no way of knowing this assumption to be true. As the *Boyde* court reasoned, when alternate theories are involved, it is "equally likely that ... the verdict rested on an unconstitutional ground" as on a constitutional one. *Id.* at 380, 110 S.Ct. 1190 (citations omitted). Because it is as likely, if not more so in light of the closing argument, that the jury relied upon facts found by a preponderance of the evidence to find Gibson guilty of the charged offenses, his conviction cannot stand.

This Court is bound by decisions of Court of Appeals for the Ninth Circuit. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir.2003) (en banc). Substituting CALJIC 2.50.02 for 2.50.01 and "domestic violence" for "sexual offenses," *Gibson* compels reaching the same result in this case.[10/] Because the burden of proof the instructions supplied for the permissive inference was unconstitutional, the decision of the California Court of Appeal was contrary to the law established by the Supreme Court in *Winship – Sullivan*. Because it is equally as likely that the jury verdict as to count I (murder) rested on an unconstitutional ground as a constitutional one, Petitioner's conviction as to count I can not stand.

Having found that Petitioner is entitled to relief on the first ground, the Court finds it unnecessary to reach the other grounds raised in the petition.[11/]

---

[10/] The Court notes that in several unpublished decisions panels of the Ninth Circuit have held that the 1999 revision to CALJIC 2.50.01, approved by the California Supreme Court in *Falsetta*, cured the defects found in *Gibson*. *See, e.g., Smith v. Ryan*, 2007 WL 387589 (9th Cir. 2/5/07); *McGee v. Knowles*, 2007 WL 13576 (9th Cir. 1/16/07); *Hildebrand v. Speirs*, 196 Fed.Appx. 514 (9th Cir.2006); *Garcia v. CDC Director*, 162 Fed.Appx. 736 (9th Cir.2006).

[11/] Even if the Court were to grant the petition on any of the other grounds asserted, it would not affect the convictions on Counts II, III, and IV and they are unnecessary to the determination of relief

Based upon the foregoing, Petitioner's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody is **GRANTED**.

IT IS ORDERED THAT, unless the State of California retries Petitioner on count I (Murder) of the information within a reasonable time, consistent with California's speedy trial requirements, Petitioner Scott P. McKinstry must be released from custody at such time as he would otherwise be released if he were convicted and sentenced solely on Counts II, III, and IV of the information.

The Clerk of the Court shall enter final judgment accordingly.

Dated:  April 12, 2007.

                                                          s/ James K. Singleton, Jr.
                                                          JAMES K. SINGLETON, JR.
                                                          United States District Judge

---

under count I.